UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SMITHGROUP, INC.,

                Plaintiff,

v.

PURE ARCHITECTURE AND
DEVELOPMENT, PLLC d/b/a Pure
Architects, and MARY FREE BED
REHABILITATION HOSPITAL, INC., a
Michigan corporation,

                Defendants.

Case No. 1:24−cv−00249−RJJ−RSK

Hon. Robert J. Jonker

JURY TRIAL DEMANDED

## PLAINTIFF SMITH GROUP INC.'S BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

**<u>CONCISE STATEMENT OF THE REASONS IN SUPPORT</u>**

Should the Court enjoin Defendants from further infringement of Plaintiff SmithGroup's registered copyrights where:

- Pursuant to a standard American Institute of Architects ("AIA") Agreement, SmithGroup created original works of authorship including several architectural renderings and provided those original works of authorship to Defendant Mary Free Bed;

- SmithGroup registered U.S. copyrights in its original works of authorship for the pediatric rehabilitation hospital expansion project;

- Defendant Mary Free Bed terminated its AIA agreement with SmithGroup;

- Defendant Mary Free Bed contracted with Defendant Pure Architects to provide the architectural services SmithGroup was previously providing to Defendant Mary Free Bed;

- In violation of SmithGroup's copyrights, Defendant Pure Architects generated, and Defendant Mary Free Bed published, a rendering for the pediatric rehabilitation hospital expansion project that was substantially similar to, and a derivative of, SmithGroup's copyrighted works of authorship provided to Defendant Mary Free Bed; and

- Defendants ongoing copyright infringement is causing, and will continue to cause, SmithGroup irreparable harm for which there is no adequate remedy at law.

Plaintiff answers: **<u>Yes</u>.**

## <u>TABLE OF CONTENTS</u>

CONCISE STATEMENT OF THE REASONS IN SUPPORT ........................................................ i

TABLE OF AUTHORITIES ................................................................................................ iii

I.      INTRODUCTION ............................................................................................. 1

II.     STATEMENT OF FACTS .............................................................................. 2

III.    LEGAL STANDARD ....................................................................................... 6

IV.   ARGUMENT ..................................................................................................... 6

       A.     SmithGroup Is Likely To Succeed On Its Copyright Infringement Claim ............. 6

             1.     SmithGroup owns valid and existing copyrights to its Copyrighted designs ........................................................................................ 7

             2.     Defendants are copying, distributing, and publishing SmithGroup's Copyrighted designs ........................................................................ 7

       B.     SmithGroup Will Be Irreparably Harmed If Defendants Are Not Preliminary Enjoined ....................................................................... 11

       C.     The Balance of Hardship Tips Sharply in SmithGroup's Favor ........................... 13

       D.     The Public Interest Is Served By The Granting of An Injunction ........................ 13

V.     CONCLUSION .................................................................................................. 14

CERTIFICATE OF COMPLIANCE .............................................................................. 15

CERTIFICATE OF ELECTRONIC SERVICE ........................................................... 16

**<u>TABLE OF AUTHORITIES</u>**

**Cases**

*Bonner v. Dawson*,
 No. Civ.A. 502CV00065, 2003 WL 22432941 (W.D. Va. Oct. 14, 2003) ..................... 11

*Frisch's Restaurant, Inc. v. Shoney's, Inc.*,
 759 F.2d 1261 (6th Cir.1985) ........................................................................... 6

*G & V Lounge, Inc. v. Mich. Liquor Control Com'n*,
 23 F.3d 1071 (6th Cir. 1994) ......................................................................... 14

*Kohus v. Mariol*,
 328 F.3d 848 (6th Cir. 2003) ........................................................................... 8

*Lexmark Intl. Inc. v. Static Control Components, Inc.*,
 387 F.3d 522 (6th Cir. 2004) ......................................................................... 11

*Nintendo of Amer., Inc. v. Elcon Industries, Ind.*,
 564 F. Supp. 937 (E.D. Mich. 1982) ................................................................. 7

*Obama for Am. v. Husted*,
 697 F.3d 423 (6th Cir. 2012) ........................................................................... 6

*RDI of Michigan, LLC v. Michigan Coin-Op Vending, Inc.*,
 631 F. Supp. 2d 868 (E.D. Mich. 2008) ................................................. 6, 11, 13

*Robert R. Jones Assocs., Inc. v. Nino Homes*,
 858 F.2d 274 (6th Cir.1988) ........................................................................... 7

*Sony/ATV Pub., LLC v. Marcos*,
 651 Fed. Appx. 482 (6th Cir. 2016) ................................................................. 11

*T-Peg, Inc. v. Vermont Timber Works, Inc.*,
 459 F. 3d 97 (1st Cir. 2006) ........................................................................... 10

*Tree Pub. Co. v. Warner Bros. Records*,
 785 F. Supp. 1272 (M.D. Tenn. 1991) ............................................................. 13

*Versah, LLC v. UI Amin Indus.*,
 No. 2:20-cv-12657-TGB-RSW, 2020 WL 7241053 (E.D. Mich. Dec. 9, 2020) ............. 12

*Vrachovska v. Beacoz L.L.C.*,
 No. 18-13573, 2019 WL 2266840 (E.D. Mich. May 28, 2019) ........................... 7

*Winter v. Nat. Res Def. Council,*
    555 U.S. 7 (2008) ............................................................................................. 6

*Yang v. Shenzen Hongrangrui Tech. Co.,*
    No. 23-cv-13001, 2023 WL 8598128 (E.D. Mich. Dec. 12, 2023) ........................... 11, 13

## Statutes

17 U.S.C. § 101 ......................................................................................................... 10
17 U.S.C. § 102 ........................................................................................................... 7
17 U.S.C. § 410 ........................................................................................................... 7
17 U.S.C. § 502 ........................................................................................................... 6

## Other Authorities

H.R. Rep. No. 101-735, reprinted in 1990 U.S.C.C.A.N. ........................................... 10
H.R. Rep. No. 735 (1990) .......................................................................................... 10

## Rules

Fed. R. Civ. P. 65 ........................................................................................................ 6

Plaintiff, SmithGroup, Inc. ("SmithGroup") submits this Memorandum of Law in Support of its Motion for Preliminary Injunction against Defendants Pure Architecture and Development, PLLC d/b/a Pure Architects ("Pure Architects") and Mary Free Bed Rehabilitation Hospital, Inc. ("Mary Free Bed") (collectively "Defendants").

## I.      INTRODUCTION

As set forth in the Complaint, SmithGroup owns valid copyrights to architectural works provided to Mary Free Bed for an expansion of Mary Free Bed's pediatric rehabilitation hospital. Defendants have engaged in the unauthorized copying, distribution, and publication of SmithGroup's copyrighted architectural works, causing SmithGroup immediate and irreparable harm that cannot be compensated by money damages.  If not enjoined, the irreparable harm to SmithGroup will compound as Defendants proceed to construct buildings incorporating SmithGroup's copyrighted architectural works.

Mary Free Bed received SmithGroup's copyrighted works, terminated its relationship with SmithGroup without securing a license to use SmithGroup's works, and improperly distributed SmithGroup's materials to Pure Architects in violation of SmithGroup's copyrights. Pure Architects then improperly used SmithGroup's materials to create derivative works in violation of SmithGroup's copyrights.  As one example, Pure Architects and Mary Free Bed cooperated to improperly publish those derivative works on Mary Free Bed's website.

Defendants' ongoing copying, publication, and distribution of SmithGroup's architectural works infringes SmithGroup's copyrights and harms SmithGroup's reputation and goodwill. Defendants' continued and knowing exploitation of SmithGroup's copyrights is causing irreparable harm to SmithGroup, which will continue without preliminary injunctive relief.

Accordingly, SmithGroup moves this Court for the entry of a preliminary injunction directing Defendants to cease and desist from any and all infringement of SmithGroup's copyrighted architectural works, including but not limited to the copying, distribution, and publication of SmithGroup's original works of authorship or derivative works thereof, and the construction of any structures incorporating SmithGroup's copyrighted subject matter.

## II.      STATEMENT OF FACTS

Since its inception in 1853, SmithGroup has established itself as an internationally recognized architectural firm with over 1,400 employees. SmithGroup's award-winning architecture can be found throughout the world in various sectors including government, health, education, residential, and workspace. In December 2022, Defendant Mary Free Bed selected SmithGroup to provide architectural and engineering services for Mary Free Bed's expansion of its pediatric rehabilitation hospital. (Ex. 1, Kenyon Decl., ¶6.)  On June 5, 2023, SmithGroup and Mary Free Bed entered into a standard American Institute of Architects Agreement setting forth the terms and conditions of the architectural services SmithGroup was to provide Mary Free Bed for the pediatric rehabilitation expansion project ("Architecture Agreement").  (*Id.*, ¶7.)

During that project, SmithGroup uploaded to a Microsoft Teams account dozens of architectural renderings, sketches, site planning, and other materials for Mary Free Bed to access and review.  (*Id.*, ¶9.)  Mary Free Bed representatives regularly accessed SmithGroup's Teams account to view and download SmithGroup's materials, including its renderings. (*Id.*) SmithGroup held several Microsoft Teams and in-person meetings with representatives of Mary Free Bed, in which SmithGroup's designs were presented and discussed.  (*Id.*)

2

On September 8, 2023, however, Mary Free Bed exercised its right to terminate the Architecture Agreement with SmithGroup for convenience.  (*Id.*, ¶10.) Mary Free Bed did not secure a license to continue using SmithGroup's works.  (*Id.*, ¶11.)

In October 2023, Mary Free Bed announced that it had engaged Pure Architects to design the pediatric rehabilitation expansion. (*Id.*, ¶12.) Shortly thereafter, SmithGroup learned that Pure Architects' renderings for Mary Free Bed pediatric rehabilitation expansion project contain design elements that are substantially similar to SmithGroup's Copyrighted architectural works. (*Id.*, ¶¶13-19.) The following SmithGroup rendering, for example, shows a three-story curved-face structure positioned on the northwest corner of the parcel, with a pedestrian bridge connected to the third level, which is substantially similar to the shape, positioning, and bridge connection in the Pure Architects Rendering. (*Id.*, ¶15.)



**SmithGroup Rendering**          **Pure Architects Rendering**

Likewise, the following SmithGroup rendering provided to Mary Free Bed shows ribbon windows with fins, which are substantially similar to the ribbon windows with fins included in Pure Architects Rendering. (*Id.*, ¶16.)

 

**SmithGroup Rendering**            **Pure Architects Rendering**

SmithGroup's design renderings provided to Mary Free Bed also included a staircase element to the right corner of the building, following the curved-then-straight ribbon windows. (*Id.*, ¶17.)  As shown below, this SmithGroup design is substantially similar to the Pure Architects Rendering. (*Id.*)



**SmithGroup Rendering**            **Pure Architects Rendering**

SmithGroup's design renderings provided to Mary Free Bed also included certain "wow elements" such as exterior color fin accents associated with the windows and other exterior design features.  (*Id.*, ¶18.)  As shown below, Pure Architects included substantially similar features in its rendering.  (*Id.*)

4

 

**SmithGroup Rendering**                    **Pure Architects Rendering**

In addition to renderings, the SmithGroup also provided Mary Free Bed with building planning designs, including a "rooftop gardens," which is yet another design feature included in the Pure Architects Rendering. (*Id.*, ¶19.)



**Pure Architects Rendering**

It is unlikely that Pure Architects could create the above renderings in the short amount of time between SmithGroup's termination on September 8, 2023, and the publication of the Pure Architects Rendering in October 2023, with such a high degree of overlap, without access to and reliance upon the SmithGroup renderings provided to Mary Free Bed.  (*Id.*, 20.)

After learning about Defendants' infringement, on November 14, 2023, SmithGroup sent Mary Free Bed a letter demanding that Mary Free Bed "immediately cease and desist" from continued use of SmithGroup's copyrighted architectural works. (*Id.*, ¶21.)  Mary Free Bed denied that it had continued to use SmithGroup's copyrighted work, necessitating this lawsuit.

### III.    LEGAL STANDARD

The Copyright Act expressly authorizes injunctive relief under Section 502, which in part, states: "Any court having jurisdiction of a civil action arising under this title may, … grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502. To prove entitlement to a preliminary injunction in accordance with Fed. R. Civ. P. 65 and 17 U.S.C. § 502, Plaintiff must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor and that an injunction is in the public interest." *Winter v. Nat. Res Def. Council,* 555 U.S. 7, 20 (2008); *see also Obama for Am. v. Husted,* 697 F.3d 423, 428 (6th Cir. 2012). "The standard for injunctive relief is not a rigid and comprehensive test, and the four factors are to be balanced, not prerequisites that must be satisfied. Rather, 'these factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements.'" *RDI of Michigan, LLC v. Michigan Coin-Op Vending, Inc.*, 631 F. Supp. 2d 868, 872 (E.D. Mich. 2008). Here, all four factors favor SmithGroup.

### IV.    ARGUMENT

#### A.    SmithGroup Is Likely To Succeed On Its Copyright Infringement Claim

To prevail on its copyright infringement claim, SmithGroup must establish: "(1) ownership of a valid copyright; and (2) [Defendants'] copying of constituent elements of the work that are original." *Id.* at 872 (citing *Frisch's Restaurant, Inc. v. Shoney's, Inc.,* 759 F.2d 1261, 1263 (6th Cir.1985)). As detailed below, SmithGroup establishes both of these elements.

1.   **SmithGroup owns valid and existing copyrights to its Copyrighted designs**

Section 102 of the Copyright Act enumerates "architectural works" as a category of "original works" for which copyright protection exists. *See* 17 U.S.C. § 102. Further, a certificate of copyright registration "establishes a *prima facie* presumption that the copyright is valid and subsisting and that plaintiff is otherwise entitled to the protection afforded by law to the holder of the copyright." *Nintendo of Amer., Inc. v. Elcon Industries, Ind.*, 564 F. Supp. 937, 943 (E.D. Mich. 1982) (citations omitted); *see also* 17 U.S.C. § 410.

On March 7, 2024, the United States Copyright Office issued SmithGroup copyright registrations for SmithGroup's architectural designs provided to Mary Free Bed, including each of the features identified above.  (*See* Dkt. 1-1 and Dkt. 1-2, Exs. 1 and 2 filed with Complaint.) This is *prima facie* evidence that SmithGroup's copyrights are valid and that SmithGroup is entitled to the protection afforded by the U.S. copyright laws.

2.   **Defendants are copying, distributing, and publishing SmithGroup's Copyrighted designs**

"Because direct evidence of copying is rare, a plaintiff may establish 'an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue.'" *Vrachovska v. Beacoz L.L.C.*, No. 18-13573, 2019 WL 2266840, at *2 (E.D. Mich. May 28, 2019); *Robert R. Jones Assocs., Inc. v. Nino Homes*, 858 F.2d 274, 276–277 (6th Cir.1988).

Here, there can be no doubt that Defendants had access to SmithGroup's Copyrighted designs. Pursuant to the Architectural Agreement, SmithGroup uploaded to its Microsoft Teams Account dozens of architectural renderings, sketches, site planning, and other materials for the Mary Free Bed pediatric rehabilitation expansion project, which Mary Free Bed representatives regularly accessed to view and download. In fact, SmithGroup held numerous Microsoft Teams

and in-person meetings with representatives of Mary Free Bed, in which SmithGroup's designs were presented and discussed. The substantial degree of overlap between the SmithGroup renderings provided to Mary Free Bed, and the rendering that Pure Architects published on Mary Free Bed's website only one month later, is strong evidence that Mary Free Bed provided Pure Architects with access to SmithGroup's copyrighted works.  Accordingly, the first factor—*i.e.,* access—is established. *See id.* ("Access is proven when the plaintiff shows that the defendant had an opportunity to view or to copy plaintiff's work.").

With respect to the second factor—*i.e.,* substantial similarity—the Sixth Circuit has adopted a two-step approach: "the first step 'requires identifying which aspects of the artist's work, if any, are protectible by copyright,' [and] the second 'involves determining whether the allegedly infringing work is 'substantially similar' to protectible [*sic*] elements of the artist's work[.]" *See Kohus v. Mariol*, 328 F.3d 848, 855 (6th Cir. 2003).

As evidenced by SmithGroup's certificates of copyright registration (Dkt. 1-1 and Dkt. 1-2, Exs. 1 and 2 filed with Complaint), the overall form of SmithGroup's architectural renderings as well as the arrangement of elements in the design and composition of spaces are protectable by copyright. More specifically, for example, at least the following aspects of SmithGroup's renderings, individually or in combination, are protectable: (i) a three-story curved-face structure positioned on the northwest corner of the parcel, with a pedestrian bridge connected to the third level; (ii) curved-then-straight ribbon windows with finned projections; (iii) a staircase element to the right of the curved-then-straight straight ribbon windows; (iv) exterior color fin accents associated with the windows; and (v) a rooftop garden.

As to the second step of the "substantial similarity" approach, it is evident, as demonstrated by the side-by-side depictions below, that an ordinary observer would regard the Defendants' rendering (right) as substantially similar to SmithGroup's designs (left).

 

 

 

 

Like the SmithGroup's designs, for example, the Defendants' rendering shows a three-story curved-face structure positioned on the northwest corner of the parcel, with a pedestrian bridge connected to the third level, wherein a staircase appears to the right of the curved and straight ribbon windows and the exterior boasts a colored fin accents associated with the windows as well as other design features, including, but not limited to, a "rooftop" garden.  (Ex. 1, Kenyon Decl., ¶¶13-19.)

The overlap in creative design features is abundantly clear from these examples.  Under the Copyright statute, SmithGroup's registered architectural work "includes the overall form as well as the arrangement and composition of spaces and elements in the design," but not individual standard features.  17 U.S.C. § 101.[1]  The legislative history for this definition confirms that SmithGroup's "selection, coordination, or arrangement of [independently] unprotectible elements into an original" is "protectable" under the statute.  H.R. Rep. No. 101-735, reprinted in 1990 U.S.C.C.A.N. at 6949.

While Mary Free Bed and Pure Architects likely engaged in actual (verbatim) copying of SmithGroup's architectural works behind closed doors, direct evidence of actual copying is "rare" and is not required to sustain a claim for copyright infringement.  *See T-Peg, Inc. v. Vermont Timber Works, Inc.*, 459 F. 3d 97, 111 (1st Cir. 2006) (reversing summary judgment in favor of defendant where similarity existed in the at-issue architectural designs and the district court incorrectly required direct evidence of actual copying). In *T-Peg*, the First Circuit held:

---

[1] The references to "overall form" and the nonprotectability of "individual standard features" in the statutory definition "are not intended to indicate that a higher standard of similarity is required to prove infringement of an architectural work, or that the scope of protection of architectural works is limited to verbatim or near-verbatim copying."  H.R. Rep. No. 735, at 6952 (1990).

> The two works need not be exact copies to be substantially similar. Differences between the works have some effect on the inquiry, but the mere existence of differences is insufficient to end the matter in the defendant's favor.

*Id.* at 112.  In that case, the district court erred by failing to consider similarities that went to the "overall form" of the building as well as the "arrangement and composition of spaces and elements." *Id.*; *see also Bonner v. Dawson*, No. Civ.A. 502CV00065, 2003 WL 22432941, at *4 (W.D. Va. Oct. 14, 2003) (granting summary judgment in favor of plaintiff because of "overwhelming[] similar[ity]" where defendants "had access to the plaintiff's copyrighted work"). In the present case, there is overwhelming similarity between the overall form of the renderings for the pediatric rehabilitation hospital, including the arrangement and composition of the elements from the SmithGroup renderings illustrated above.

Having established ownership of valid copyrights, access to its copyrighted works and substantial similarity between Defendants' rendering and SmithGroup's architectural design, SmithGroup has shown a substantial likelihood that it will succeed on the merits.

**B.    SmithGroup Will Be Irreparably Harmed If Defendants Are Not Preliminary Enjoined**

SmithGroup is suffering and will continue to suffer harm that cannot be adequately compensated by monetary damages. (Ex. 1, Kenyon Decl., ¶¶22-26.)  As a preliminary matter, "[i]n the copyright context, much rests on the first factor [of the four part test] because irreparable harm **is presumed** once a likelihood of success has been established[.]" *See RDI of Mich., LLC*, 631 F. Supp. 2d at 874 (quoting *Lexmark Intl. Inc. v. Static Control Components, Inc.,* 387 F.3d 522, 532–33 (6th Cir. 2004)) (emphasis in original); *see also Sony/ATV Pub., LLC v. Marcos*, 651 Fed. Appx. 482, 487 (6th Cir. 2016) (applying presumption); *Yang v. Shenzen Hongrangrui Tech. Co.*, No. 23-cv-13001, 2023 WL 8598128, at *4–5 (E.D. Mich. Dec. 12, 2023) (same).  Michigan courts, relying on this presumption, routinely grant copyright owners'

motion for preliminary injunction. *RDI of Mich., LLC*, 631 F. Supp. 2d at 877 (granting copyright owner's motion for preliminary injunction and relying on the presumption of irreparable injury); *see also Yang*, 2023 WL 8598128, at *4–5 (same).

Independent of the presumption of irreparable harm, absent an injunction, SmithGroup will be irreparably harmed by the Defendants' ongoing violation of its copyrights. Courts often find damages to a party's reputation and loss of goodwill to constitute an "irreparable injury because the damages flowing from such losses are difficult to compute." *See Versah, LLC v. UI Amin Indus.*, No. 2:20-cv-12657-TGB-RSW, 2020 WL 7241053, at *5 (E.D. Mich. Dec. 9, 2020).

In this case, SmithGroup has lost control of its copyrighted subject matter to Pure Architects and the Defendants' continued infringement is likely to lead to SmithGroup's loss of customers to Pure Architects.  (Ex. 1, Kenyon Decl., ¶¶22-26.)  The professional architectural services market for pediatric treatment and rehabilitation facilities, as well as the client base for those services, is relatively small.  (*Id.*) In the market of pediatric treatment and rehabilitation facility architecture, there is a high likelihood that potential SmithGroup clients in the pediatric rehabilitation market reach out to Pure Architects that would have otherwise commissioned SmithGroup for similar architectural services.  (*Id.*)  This is especially true in the Michigan and Midwest markets where both SmithGroup and Pure Architects are located.  (*Id.*)  Potential clients in these markets are likely to view the Pure Architects rendering addressed in the Complaint as original work of Pure Architects, as opposed to a derivation of SmithGroup's creative works. (*Id.*) This confusion over the original source of the creative expression reflected in the Pure Architects' renderings is likely to drive clients in the pediatric medical market to Pure Architects that would have otherwise gone to SmithGroup for architectural services in that segment.  (*Id.*)

The impact on SmithGroup's reputation and client base caused by the ongoing infringement will be compounded as the building project at Mary Free Bed continues and structures incorporating SmithGroup's copyrighted architecture are erected. (*Id.*)

There is no adequate remedy at law for SmithGroup's likely loss of customers due to the ongoing infringement because money damages will never bring back a lost customer, and it is impossible to assess the monetary damage such a customer loss might represent.

For these reasons, the irreparable harm factor favors granting an injunction.

## C.     The Balance of Hardship Tips Sharply in SmithGroup's Favor

In copyright infringement cases, "courts generally ignore the harm to others consideration because an infringer could set up his infringement with substantial investment and thereby claim harm by the injunctive relief." *Tree Pub. Co. v. Warner Bros. Records,* 785 F. Supp. 1272, 1276 (M.D. Tenn. 1991). Even if not ignored, equity favors an injunction because the harm the Defendants face (if any) is significantly outweighed by the harm SmithGroup will suffer if infringement continues. Defendants have no rights in the SmithGroup's Copyrighted architectural works and their continued infringement only harms the reputation and goodwill of SmithGroup.

## D.     The Public Interest Is Served By The Granting of An Injunction

Caselaw is clear that, "where there is copyright infringement," public interest is served by the issuance of the injunction. *See RDI of Mich., LLC*, 631 F. Supp.  2d at 875 ("[T]he public has an interest in upholding copyright protections."); *Yang*, 2023 WL 8598128, at *4 ("The public has a compelling interest in protecting copyright owners' marketable rights to their work, and in protecting the economic incentive to continue creating.") (citation and quotation marks omitted). Here, the SmithGroup merely seeks to prevent the Defendants from continued and unauthorized use of its federally registered Copyrighted intellectual property by exercising its constitutional

right. *G & V Lounge, Inc. v. Mich. Liquor Control Com'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.") The public interest factor favors granting an injunction.

**V.    CONCLUSION**

For the foregoing reasons, this Court should grant SmithGroup's Motion for Preliminary Injunction directing Defendants to cease and desist from any and all continued infringement of SmithGroup's copyrighted architectural works, including but not limited to the copying, distribution, and publication of SmithGroup's original works of authorship or derivative works thereof, and the construction of any structures including SmithGroup's copyrighted subject matter.

Date: March 22, 2024

**BROOKS KUSHMAN P.C.**

 */s/ John S. LeRoy*
John S. LeRoy (P61964)
Reza Roghani Esfahani (P83787)
150 W. Second St., Suite 400N
Royal Oak, MI  48067-3846
Telephone: (248) 358-4400 / Fax: (248) 358-3351
Email:  jleroy@brookskushman.com
        resfahani@brookskushman.com

*Attorneys for SmithGroup*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of LCivR 7.2(b)(i) of the United States District Court for the Western District of Michigan.  The brief contains 3,137 words, excluding the parts of the brief exempted by LCivR 7.2(b)(i).

This brief complies with the typeface requirements of the type style requirements of LCivR 10.1.  The brief has been prepared in a proportionally spaced typeface using Microsoft® Word 2010 and Times New Roman typeface, 12-point.

*/s/ John S. LeRoy*
John S. LeRoy

## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on March 22, 2024, I electronically filed the foregoing document with the Clerk of the Court for the Western District of Michigan using the ECF System which will send notification to any registered participants of the ECF System as listed on the Court's Notice of Electronic Filing.

I also certify that on March 22, 2024, I electronically mailed the following counsel who has each represented to me (on the dates stated in the Certificate of Concurrence with L.R. 7.1, filed concurrently herewith) that they represent their respective parties.

| | |
|---|---|
| John G. Cameron Jr.<br>**DICKINSON-WRIGHT**<br>200 Ottawa Ave., N.W.<br>Suite 900<br>Grand Rapids, MI 49503-2427<br>Telephone:  616-336-1010<br>jcameron@dickinsonwright.com<br><br>*Attorneys for Defendant, Mary Free Bed Rehabilitation Hospital, Inc.* | Christopher A. Cornwall<br>**DICKINSON-WRIGHT**<br>500 Woodward Avenue<br>Suite 4000<br>Detroit, MI 48226-3425<br>Telephone:  313-223-3530<br>ccornwall@dickinsonwright.com<br><br>*Attorneys for Defendant, Pure Architecture and Development, PLLC d/b/a Pure Architects* |

  /s/ John S. LeRoy
John S. LeRoy (P61964)
150 W. Second St., Suite 400N
Royal Oak, MI  48067-3846
Telephone: (248) 358-4400 / Fax: (248) 358-3351
Email:  jleroy@brookskushman.com

*Attorneys for SmithGroup*