UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

SMITHGROUP, INC.

               Plaintiff,

v.

PURE ARCHITECTURE AND
DEVELOPMENT, PLLC d/b/a Pure
Architects, and MARY FREE BED
RECHABILITATION HOSPITAL, INC.,
a Michigan Corporation,

               Defendants.

Case No.: 1:24-CV-249
Hon. Robert J. Jonker

_____/

| | |
|---|---|
| John S. LeRoy | John G. Cameron, Jr. |
| BROOKS KUSHMAN P.C. | K. Scott Hamilton |
| Attorney for Plaintiff | Christopher A. Cornwall |
| 150 W. Second St., Ste. 400N | DICKINSON WRIGHT PLLC |
| Royal Oak, MI  48067 | Attorneys for Defendants |
| (248) 358-4400 | 500 Woodward Ave., Ste. 4000 |
| jleroy@brookskushman.com | Detroit, MI 48226 |
| | (313) 223-3500 |
| | jcameron@dickinsonwright.com |
| | khamilton@dickinsonwright.com |
| | ccornwall@dickinsonwright.com |

_____/

**DEFENDANTS' BRIEF IN RESPONSE TO PLAINTIFF'S
<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

## TABLE OF CONTENTS

INDEX OF AUTHORITIES ...........................................................................i-iii

I.      STATEMENT OF FACTS ...............................................................1

II.     ARGUMENT .....................................................................................2

        A.     Standard of Review. ..............................................................2

        B.     Plaintiff Fails to Satisfy the Standards for a Preliminary Injunction. ...3

               1.     Plaintiff cannot establish a likelihood of success on the merits of its copyright claim. ...................................................3

               2.     Plaintiff cannot establish immediate and irreparable injury. ......8

                      a.     Plaintiff has an adequate remedy at law. ........................9

                      b.     Plaintiff's assertion of "reputational injury" is speculative and factually unfounded. ................................................13

                      c.     Plaintiff's inexplicable delay in seeking preliminary injunctive relief establishes there is no immediate, imminent irreparable harm. ..........................................15

                      d.     Plaintiff's claim that irreparable injury should be presumed is based on outdated law. ...............................19

               3.     Plaintiff cannot establish that the balance of harm weighs in its favor. ........................................................................20

               4.     Plaintiff cannot establish that a preliminary injunction is in the public interest. .......................................................................21

III.    CONCLUSION ................................................................................22

# INDEX OF AUTHORITIES

**Cases**

*ACT, Inc. v. Worldwide Interactive Network, Inc.*, 46 F.4th 489 (6th Cir. 2022) ...................................................................................................................13

*Apple Computer, Inc. v. Formula Int'l, Inc*, 725 F.2d 521 (9th Cir. 2011)..............20

*Benisek v Lamone*, ___ U.S. ___, 138 S. Ct. 1942 (2018) ........................................9

*Broadcast Music, Inc v. Pamdh Enterprises, Inc.,* 2014 WL 2781846 (S.D.N.Y., June 19, 2014)...................................................................................11

*Building Graphics, Inc v. Lennar Corp.*, 866 F. Supp.2d 530 (W.D. Car. 2011) ...................................................................................................................8

*Bus. Trends Analysts v. Fredonia Grp.*, 650 F. Supp. 1452 (S.D.N.Y. 1987) ........18

*Cheetah Miner USA, Inc. v. 19200 Glendale, LLC*, 2023 WL 6601863 (6th Cir., Oct. 10, 2023) ...........................................................................................9

*Cheetah Miner USA, Inc. v. 19200 Glendale, LLC*, 2023 WL 6601863 (E.D. Mich., Oct. 10, 2023)...................................................................................13

*Citibank, N.A. v. Citytrust*, 756 F.2d 273(2d Cir. 1985)..........................................16

*Computer Generated Solutions, Inc. v. Koral*, 1998 WL 1085945 (S.D.N.Y., Dec. 9, 1998).......................................................................................11

*D.T. v. Sumner County Schools*, 942 F.3d 324 (6th Cir. 2019) .................................2

*D.T. v. Sumner County Schs.*, 942 F.3d 324 (6th Cir. 2019) ...................................14

*Enchant Christmas Light Maze & Market Ltd. v. Glowco, LLC*, 958 F.3d 532 (6th Cir. 2020)...........................................................................................2

*Essex Music, Inc. v. ABKCO Music and Records, Inc.*, 743 F. Supp. 237 (S.D. N.Y. 1990) ..............................................................................................16

*Essroc Cement Corp. v. CPRIN, Inc.*, 593 F.Supp.2d 962 (W.D. Mich. 2008)......14

*Forry, Inc. v. Neundorfer, Inc.*, 837 F.2d 259 (6th Cir. 1988).................................20

i

*Friendship Materials, Inc. v. Mich. Brick, Inc.* 679 F.2d 100 (6th Cir. 1982) ..........8

*Gonzalez v. Nat'l Bd. Of Med. Examiners*, 225 F.3d 620 (6th Cir. 2000)..................3

*Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc.*, 864 F. Supp.2d
    316 (E.D. Pa. 2012) ...................................................................................12

*Hall v. Edgewood Partners Inc. Ctr., Inc.*, 878 F.3d 524 (6th Cir. 2017).................2

*Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189 (2d Cir. 1985)...............17

*Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.,* 736 F.3d 1239 (9th Cir. 2013)
    .......................................................................................................................14

*Mad Mobile Inc v. Meijer Great Lakes Ltd Partnership* –F. Supp.3d --  2023
    WL 9601660 (W.D. Mich., Nov. 15, 2023) ........................................................1

*Mazurek v. Armstrong*, 520 U.S. 968, 872 (1997).....................................................2

*Pearson v. Quickturn Design Systems*, 1998 WL 34607 (N.D. Cal., Jan. 23,
    1998) .............................................................................................................12

*Redbox Automated Retail, LLC v. Xpress Retail LLC*, 310 F. Supp.3d 949
    (N.D. Ill. 2018)..............................................................................................16

*RJ Control Consultants, Inc. v. Multiject, LLC*, -- F.4th --, 2024 WL 1432723
    (6th Cir., Apr. 3, 2024)(citations omitted)........................................................7

*S. Milk Sales, Inc. v. Martin*, 924 F.2d 98 (6th Cir. 1991).........................................9

*Sahara Health Care, Inc. v. Azar*, 349 F. Supp.2d 555 (S.D. Tex. 2018)................3

*Silber v Barbara's Bakery, Inc.*, 950 F. Supp.2d 432 (E.D.N.Y. 2013)..................16

*Trek Leasing, Inc v. United States,* 66 Fed. Cl. 8 (U.S. Ct. of Claims 2005)..........7

*Two Kids from Queens, Inc. v. J&S Kidswear, Inc.*, 2009 WL 5214497
    (E.D.N.Y. Dec. 30, 2009) .............................................................................16

## Statutes

Architectural Works Copyright Act, 17 U.S.C. §101 ..............................................7

M.C.L. 333.22225(i) .............................................................................................21

**Rules**

Fed. R. Civ. P. 11(b)(3)......................................................................................5

Fed. R. Civ. P. 12(b)(6)(12).............................................................................3

## I.    STATEMENT OF FACTS

Plaintiff SmithGroup, Inc.'s Motion for Preliminary Injunction is, like its complaint, based on architectural design renderings from Defendant Pure Architects that are outdated.  Pure Architects' current design for the Mary Free Bed pediatric rehabilitation facility does not, for example, incorporate ribbon windows; it does not have an external stairwell; it does not have a rooftop garden.  Moreover, Pure Architects derived other design features, such as the rounded corner of the building, from initial drawings by a third architectural firm (Progressive AE) that were prepared for and used by Mary Free Bed when it sent out a request for proposal for the project and *before* Plaintiff created its designs.  Furthermore, the rounded corner is a common standard design feature that is dictated by the curved street around the parcel on which the new facility will sit.

Defendants incorporate by reference and without repetition the Statement of Facts in their Brief in Support of Motion to Dismiss (R.12)(PageID.182-206), supplemented as necessary in the Argument section of this Brief.

Defendants also incorporate by reference and without repetition the arguments and authorities, including *Mad Mobile Inc v. Meijer Great Lakes Ltd Partnership* -- F. Supp.3d --  2023, WL 9601660 (W.D. Mich., Nov. 15, 2023), set out in their Reply Brief in Support of Motion to Compel Arbitration (R. 17)(PageID.446-50) establishing that any preliminary injunctive relief is subject to mandatory arbitration

1

and should be decided by the arbitrator, not the Court.  Applying *Mad Mobile*
requires denying Plaintiff's Motion for Preliminary Injunction for reasons
independent of, and in addition to, the reasons in this Response.

## II.    ARGUMENT

### A.    Standard of Review.

In the context of copyright claims, the Sixth Circuit has held that "[g]ranting
a 'preliminary injunction is an extraordinary remedy reserved only for cases when it
is necessary to preserve the status quo until trial'." *Enchant Christmas Light Maze
& Market Ltd. v. Glowco, LLC*, 958 F.3d 532, 535 (6th Cir. 2020)(quoting *Hall v.
Edgewood Partners Inc. Ctr., Inc.*, 878 F.3d 524, 526 (6th Cir. 2017)).

The Sixth Circuit further explained that in copyright cases, a "preliminary
injunction is an extraordinary and drastic remedy, one that should not be granted
unless the movant, *by a clear showing*, carries the burden of persuasion." *Enchant,
supra, id.* (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 872 (1997)).

Plaintiff's burden is as follows:

> Four factors determine when a court should grant a
> preliminary injunction: (1) whether the party moving for
> the injunction is facing immediate, irreparable harm; (2)
> the likelihood that the movant will succeed on the merits;
> (3) the balance of the equities; and (4) the public interest.

*D.T. v. Sumner County Schools*, 942 F.3d 324, 326 (6th Cir. 2019).

Plaintiff cannot meet its heavy burden on any of these factors, and its Motion for Preliminary Injunction should therefore be denied.

**B.     Plaintiff Fails to Satisfy the Standards for a Preliminary Injunction.**

### 1.     Plaintiff cannot establish a likelihood of success on the merits of its copyright claim.

A "finding that there is simply no likelihood of success on the merits of its copyright claim is usually fatal" to a motion for a preliminary injunction. *Gonzalez v. Nat'l Bd. Of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

Plaintiff does not have a likelihood of success on the merits of its copyright claim for several separate reasons.

First, a plaintiff cannot demonstrate a likelihood of success on the merits of a claim that is subject to dismissal for failure to state a claim.  *See e.g., Sahara Health Care, Inc. v. Azar*, 349 F. Supp.2d 555, 566 (S.D. Tex. 2018) ("the standards for a Rule 12(b)(6) motion to dismiss and the first element of injunctive relief – that plaintiff has a substantial likelihood of success on the merits – essentially overlap and operate to reach the same conclusion").

For all the reasons in Defendants' March 28, 2024 Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)(12) (PageID.182-206),  Plaintiff cannot prevail on the merits of its copyright claim because it waived any such claim under the Agreement.

Defendants incorporate by reference the arguments and authority in Defendant's Motion to Dismiss, but the argument is summarized in the following syllogism:

1.  If under the Agreement, Plaintiff "shall commence all claims and causes of action . . . arising out of or related to this Agreement . . .  in accordance with the binding dispute resolution method" of mediation and arbitration; and

2.  If under the Agreement, Plaintiff "waive[s] all claims and causes of action not commenced in accordance with" that binding dispute resolution method; and

3.  If Plaintiff's copyright claim arises out of and is related to the Agreement (because whether Defendants have a license to use the copyright depends on whether Defendants breached the Agreement); and

4.  If Plaintiff did not commence the copyright claim in accordance with the Agreement's binding dispute resolution method;

5.  Then, Plaintiff has waived its copyright claim.

(R. 12, Defendants' Brief in Support of Motion to Dismiss at 8-15) (PageID.196-203).

Under the Agreement's unambiguous terms, Plaintiff agreed that if it did not commence a claim in accordance with the Agreement's dispute resolution procedures, the claim is waived.  Because Plaintiff's copyright claim arises out of and relates to the Agreement, and Plaintiff did not commence that claim in

accordance with the Agreement's mediation and arbitration procedures, that claim is waived.

Second, Plaintiff cannot establish a likelihood of success on its copyright claim because Plaintiff has no evidence, much less clear evidence, that Pure Architects copied and used Plaintiff's designs.  A critical – indeed, *the* critical – allegation of Plaintiff's copyright claim is Paragraph 25, which is pleaded only on information and belief:

> 25.  ***On information and belief***, Mary Free Bed provided Pure Architecture with access to the SmithGroup's Instruments of Service, and Pure Architecture made unauthorized copies of SmithGroup's Instruments of Service to create and publish unauthorized derivative works.  Under Fed. R. Civ. P. 11(b)(3), the allegations in this paragraph will likely have evidentiary support ***after*** a reasonable opportunity for further investigation or discovery.

(R. 1, Complaint, ¶25)(Page ID.7)(emphasis added).

That allegation expressly concedes that it was made without evidence to support it, and was instead made only on "information and belief" with Plaintiff's hope that it might develop evidence to support it later, and only after engaging in discovery.  But for a preliminary injunction, Plaintiff has a heavy burden of making a "clear showing" *now* that it will likely prevail on the merits.  By its own pleading, Plaintiff admits it presently has no such evidence for this critical allegation.

5

More importantly, Plaintiff's speculative allegation is factually wrong because Pure Architects *did not* copy or rely upon Plaintiff's renderings in creating its own designs.  (Zachary Verhulst Affidavit, ¶¶ 5-6, 8-9)(Exhibit 1).

Long before Plaintiff's rendering of a rounded-corner building (R.1, Complaint ¶¶31, 33)(PageID.809), Mary Free Bed's Request for Proposal ("RFP") set out the basic building design, which design was initially prepared by architectural firm Progressive AE.  That was the basis upon which Pure Architects generated their renderings, not Plaintiff's rendering.  (Verhulst Aff., ¶ 8).

Third, the Pure Architect's design renderings alleged in Plaintiff's complaint, which renderings Plaintiff rely on its Motion for Preliminary Injunction, are outdated and do not represent Pure Architect's current building designs.  (Verhulst Aff., ¶7).  Pure Architect's design is 40,000 square feet smaller, does not use ribbon windows, does not have the same stairwell, and does not have a rooftop garden.  (Verhulst Aff., ¶¶ 7-9).

Fourth, the "scenes a faire" doctrine bars Plaintiff's copyright claim.

The "*scenes a faire*" doctrine "'operates to bar certain otherwise creative expressions from copyright protection'," and arises "when the expectations of an industry or subject matter require on another to express facts in a certain way, rendering only a few choices 'feasible in that setting' even if alternatives

theoretically remain'."  *RJ Control Consultants, Inc. v. Multiject, LLC,* -- F.4th --, 2024 WL 1432723 (6th Cir., Apr. 3, 2024)(citations omitted).

The *scenes a faire* doctrine applies to architectural drawings.  *Trek Leasing, Inc v. United States,* 66 Fed. C1. 8 (U.S. Ct. of Claims 2005) ("the concept of *scenes a faire*" applies to "architectural works").  In this case, the hospital's rounded corner is dictated by the rounded curb of the roundabout on which the facility will be located, because it is the only way to maximize the hospital's usable space. (Verhulst Aff., ¶8) ("[a]ll firms that submitted proposals to Mary Free Bed in 2022 had to consider the rehabilitation spaces that would be displayed along Wealthy Avenue, and the design precedent shared including Helen DeVoss Children's Hospital that is curved, . . . of necessity and client desire, the designs of SmithGroup and Pure Architects entailed a rounded corner that followed the roundabout").  The terrain dictated a rounded corner, and that is the only feasible way of conforming the building to the parcel.

Fifth, the rounded corner is a "standard architectural design feature" that is not protected by copyright.  The Architectural Works Copyright Act, 17 U.S.C. §101,  provides that protected work "includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features."  17 U.S.C. § 101.

7

"Though left undefined in the AWCPA, 'standard features' has been interpreted to mean features dictated by purely functional requirements." *Building Graphics, Inc v. Lennar Corp.*, 866 F. Supp.2d 530, 537 (W.D. Car. 2011).

The rounded building corner is a common, standard architectural feature used to maximize building space when the buildings are set on parcels with round street borders (Verhulst Aff., ¶8).  It therefore is not protected under the AWCPA.

Plaintiff cannot establish a likelihood of success on its copyright claim.

### 2.    Plaintiff cannot establish immediate and irreparable injury.

Although "[c]ourts sometimes describe [the four-part] inquiry as a balancing test," "even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement'." *D.T., supra*, 942 F.3d at 326-27 (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.* 679 F.2d 100, 105 (6th Cir. 1982)). Indeed, the immediate and irreparable injury "factor is indispensable:  If the plaintiff isn't facing immediate and irreparable injury, there's no need to grant relief *now* as opposed to at the end of the lawsuit." *Id.* at 327.  The Sixth "[C]ircuit has held that a district court abuses its discretion 'when it grants a preliminary injunction without making specific findings of irreparable injury." *Id.*

In short, "although the *extent* of an injury may be balanced against other factors, the *existence* of an irreparable injury is mandatory," and "a district court is 'well within its province' when it denies a preliminary injunction based solely on

8

the lack of an irreparable injury." *D.T.*, *supra*, 942 F.3d at 327 (emphasis in original)(quoting *S. Milk Sales, Inc. v. Martin*, 924 F.2d 98, 103 (6ᵗʰ Cir. 1991)).

In the Sixth Circuit, "[t]o merit a preliminary injunction, an injury 'must be both certain and immediate,' not 'speculative or theoretical'," and a "hypothetical threat of" injury "is not an 'immediate,' 'irreparable' injury that warrants the 'extraordinary remedy' of a preliminary injunction." *D.T.*, *supra*, 942 F.3d at 327 (quoting *Benisek v Lamone*, ___ U.S. ___, 138 S. Ct. 1942, 1943 (2018)). *See also Cheetah Miner USA, Inc. v. 19200 Glendale, LLC*, 2023 WL 6601863 (6ᵗʰ Cir., Oct. 10, 2023), at *2 ("[h]ypothetical or theoretical threats [of injury] will not do" to support preliminary injunctive relief).

### a.    Plaintiff has an adequate remedy at law.

A preliminary injunction is not appropriate if the movant has an adequate legal remedy through money damages. *CSX Transp., Inc. v. Tennessee State Bd. Of Equalization,* 964 F.2d 548, 551 (6ᵗʰ. Cir. 1992) ("an injunction generally should not issue if there is an adequate remedy at law"); *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm").

The Agreement contemplates that Mary Free Bed may terminate it for convenience (Agreement, Article 9) (Exhibit 2), in which case Mary Free Bed would

maintain an exclusive license to use Plaintiff's designs by paying Plaintiff a liquidated amount, calculated by a specific formula in the Agreement.

The Agreement provides in §7.3 that Plaintiff "grants to [Mary Free Bed] a nonexclusive license to use [Plaintiff's] Instruments of Service solely and exclusively for purposes of constructing, using, maintaining, altering and adding to the Project, provided that [Mary Free Bed] substantially performs its obligations under this Agreement, including prompt payments of all sums due pursuant to Article 9 and Article 11." (Exhibit 2 at 19). It further provides that "[i]f [Plaintiff] rightfully terminates this Agreement for cause as provided in Section 9.4, the license granted in this Section 7.3 shall terminate."

Section 9.7 provides that:

> '[I]f [Mary Free Bed] terminates this Agreement for its convenience pursuant to Section 9.5, . . . [Mary Free Bed] shall pay to [Plaintiff] the following fees: *(Set forth below the amount of any termination or licensing fee, or the method for determining any termination or licensing fee).*
>
> .1    Termination Fee:  2% of remaining fee.
>
> .2    Licensing Fee if [Mary Free Bed] intends to continue using [Plaintiff's] Instruments of Service:  8% of total fee.

Exhibit 2 at 22).

The Agreement monetized the value to Plaintiff of Mary Free Bed's continued use of Plaintiff's designs, and gave Plaintiff a contractual right to recoup that

10

payment as compensation for Mary Free Bed's continued use of Plaintiff's designs. Thus, Plaintiff has an adequate legal remedy for Mary Free Bed's continued use of Plaintiff's designs, and Plaintiff has asserted that legal remedy in the pending arbitration against Mary Free Bed.

When copyrighted work is subject to a license arrangement and the fee is contested and not paid, the copyright holder has an adequate legal remedy.

*Broadcast Music, Inc v. Pamdh Enterprises, Inc.,* 2014 WL 2781846 (S.D.N.Y., June 19, 2014), explained in denying a preliminary injunction in a copyright action:

> Plaintiffs have not shown irreparable injury or a lack of adequate remedies at law.  Harm can be irreparable, and adequate remedies at law lacking, when a copyright holder seeks to prevent the use of his or her work and, absent an injunction, the defendant is likely to continue infringing the copyright . . . .  Here, however, Plaintiffs had every intention of authorizing Defendants to use the copyrighted works, had Defendants paid the required licensing fee, . . . and Plaintiffs state no other harm from Defendants' infringement.  Plaintiffs' loss (the licensing fee) is plainly and easily calculable . . . .

*Id.* at *4 (citing *Computer Generated Solutions, Inc. v. Koral*, 1998 WL 1085945 (S.D.N.Y., Dec. 9, 1998), at *1 for its holding "that plaintiff failed to show a likelihood of irreparable harm in the absence of a preliminary injunction, because plaintiff's claim involved 'the mere use of works without paying royalty fees when such works ordinarily would be available in return for payment of such fees,' and

11

thus "the only injury plaintiff could conceivably have suffered is monetary injury'"). See also *Pearson v. Quickturn Design Systems*, 1998 WL 34607 (N.D. Cal., Jan. 23, 1998), at *4 (preliminary injunction denied because plaintiff "made no showing that monetary damages could not adequately compensate him for any unauthorized use of his software" because he "has previously negotiated license fees for the use of" it).

*Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc.*, 864 F. Supp.2d 316 (E.D. Pa. 2012), denied the plaintiff a preliminary injunction, finding "that money damages will be sufficient to compensate plaintiffs for any copyright infringement . . . proven at trial" because "if all of the information concerning the unlicensed use of a particular copyrighted image were available, then the proper fee for that use could be determined based on Heilman Photography's licensing fee framework." *Id.* at 330.

In exactly the same way, in this case the Agreement set out a framework for establishing a licensing fee for Mary Free Bed's continued use of SmithGroup's copyrighted material after SmithGroup is terminated for convenience, which is what Plaintiff contends happened in this action, and what it has asserted in the pending arbitration. Thus, alleged injury from Defendants' alleged infringement can be precisely determined under the Agreement, and Plaintiff can (and has) pursue that claim for money damages under the Agreement.

Because Plaintiff has an adequate legal remedy for Mary Free Bed's alleged continued use of its designs, and has in fact already *asserted* that legal remedy by commencing the pending arbitration, preliminary injunctive relief is not available.

**b.    Plaintiff's assertion of "reputational injury" is speculative and factually unfounded.**

With respect to irreparable injury, Plaintiff's Vice President, Ann Kenyon, simply speculates that "[i]n my experience in this industry, and in the market of pediatric treatment and rehabilitation facility architecture, there is a high likelihood that *potential SmithGroup clients in the pediatric rehabilitation market may reach out to Pure Architects that would have otherwise commissioned SmithGroup for similar architectural services*" because "potential clients in the market are likely to view the Pure Architects' Rendering addressed in the Complaint as original work of Pure Architects, as opposed to a derivation of SmithGroup's creative works." (Kenyon Decl. ¶¶ 23-24) (emphasis added).

Although "interference with customer relationships and damage to reputation are precisely the sorts of injuries [that] are difficult to quantify monetarily, and thus constitute irreparable harm" (*Cheetah Miner USA, Inc. v. 19200 Glendale, LLC*, 2023 WL 6601863 (E.D. Mich., Oct. 10, 2023), at *2 (quoting *ACT, Inc. v. Worldwide Interactive Network, Inc.*, 46 F.4th 489, 503-04 (6th Cir. 2022)), "even then, the burden remains on the movant to show more than a speculative risk to its

reputation." *Id.* (citing *D.T. v. Sumner County Schs*., 942 F.3d 324, 326-27 (6th Cir. 2019)).

Plaintiff's only evidence of "reputational harm" is the Kenyon Declaration's blanket assertion, set out above, about fear that clients may be "misdirected" to Pure Architects to obtain design services for pediatric rehabilitation hospitals.   But Plaintiff gives no *evidence* to support its assertion, and a witness's "'pronouncements [that] are grounded in platitudes rather than evidence'" are "well short of the evidentiary level needed to demonstrate reputational harm." *Cheetah, supra,* quoting *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.,* 736 F.3d 1239, 1250 (9th Cir. 2013).   Plaintiff's mere speculation that would-be clients for pediatric rehabilitation hospital design services might be directed to Pure Architects is simply inadequate to establish reputational injury.

Plaintiff's alleged fear of potential lost clients in the market, or loss of market share, does not establish irreparable injury.   See *Essroc Cement Corp. v. CPRIN, Inc.*, 593 F.Supp.2d 962, 969 (W.D. Mich. 2008)("[e]ven a company's substantial loss of market share . . . does not constitute irreparable harm for" purposes of a preliminary injunction "because it too can be compensated by money damages later").

Moreover, and perhaps most importantly, Plaintiff's speculation is contrary to the undisputed facts.   From the time Pure Architects was retained by Mary Free Bed

to the present (7 months), Pure Architects has not been solicited by *any* potential client to design *any* pediatric rehabilitation hospital facility.  (Verhulst Aff., ¶ 10). That fact directly belies Plaintiff's speculative fear about potential clients being misdirected to Pure Architects.

Perhaps most importantly, Pure Architects' current design of the project bears no resemblance to Plaintiff's renderings.  The current Pure Architects renderings cannot possibly be confused with Plaintiff's renderings.  Given the fact that no clients have approached Pure Architects based on the outdated renderings in Plaintiff's complaint, in the Motion for Preliminary Injunction and in the Kenyon Declaration, there has been no "reputational injury" or client confusion.  And given that Pure Architects has not used any allegedly infringing design elements in its current design renderings,  and its current designs bear no resemblance to Plaintiff's, there is no possible risk of reputational injury or client confusion with Plaintiff's copyrighted material in the future.

### c.    Plaintiff's inexplicable delay in seeking preliminary injunctive relief establishes there is no immediate, imminent irreparable harm.

Plaintiff became aware of Defendants' allegedly infringing conduct in October, 2023 (R. 1, Complaint ¶24)(PageID.6) and sent a cease and desist letter on November 14, 2023.  (*Id.*, ¶36)(PageID.10).   But Plaintiff delayed, without explanation, until March 11, 2024 to commence its copyright claim, and delayed

until March 22, 2024 to move for preliminary injunctive relief.  Plaintiff's unexplained five (5) month delay in moving for a preliminary injunction demonstrates Plaintiff is not facing the kind of immediate the imminent irreparable injury required for a preliminary injunction.

Plaintiff's 5-month delay has two consequences.  First, it vitiates any rebuttable presumption of irreparable injury from alleged infringement.  *See, e.g., Redbox Automated Retail, LLC v. Xpress Retail LLC*, 310 F. Supp.3d 949, 952 (N.D. Ill. 2018)("the presumption [of irreparable injury] can be rebutted by, among other things, a showing that the plaintiff unreasonably delayed in seeking preliminary injunctive relief"); *Silber v Barbara's Bakery, Inc.*, 950 F. Supp.2d 432, 441-42 (E.D.N.Y. 2013)(a 5-month delay "destroy[ed] a presumption of irreparable harm"); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985)("[s]ignificant delay in applying for injunctive relief in a trademark case tends to neutralize any presumption that infringement alone will cause irreparable pending trial"); *Essex Music, Inc. v. ABKCO Music and Records, Inc.*, 743 F. Supp. 237, 244 (S.D. N.Y. 1990)("[w]hile 'irreparable harm may ordinarily be presumed from copyright infringement,.' . . . 'significant delay in seeking a preliminary injunction may be sufficient basis for vitiating such an assumption and denying preliminary relief'")(citations omitted); *Two Kids from Queens, Inc. v. J&S Kidswear, Inc.*, 2009 WL 5214497 (E.D.N.Y. Dec. 30, 2009), at *3 ("[i]rreparable harm may be presumed when a plaintiff

16

establishes a *prima facie* case of copyright or trademark infringement," but a "party's delay in enforcing its trademark or copyright may, however, rebut the presumption of irreparable harm").

*Citibank, supra*, held the "presumption of irreparable harm [was] negated by [a] ten week delay between discovery of claimed infringement and commencement of [a] lawsuit." *Two Kids From Queens, supra*, at *3.

Plaintiff's 5-month delay in moving for preliminary injunctive relief rebuts any presumption of irreparable injury.

Second, Plaintiff's inexplicable 5-month delay in moving for a preliminary injunction warrants finding there is no immediate and imminent irreparable injury.

A leading treatise, 6 McCarthy on Trademarks & Unfair Competition §31:32 (5th ed.), explained:

> It has often been held that unreasonable delay in filing suit and/or in moving for a preliminary injunction can contribute to a defeat of a motion for preliminary injunction . . . for the reason that delay negates the moving party's ability to show the kind of "irreparable injury" needed for preliminary relief.

*Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir. 1985), "declined to issue a preliminary injunction in a copyright infringement case in part because the plaintiff had delayed seeking such relief for over six months after

17

learning of the conduct allegedly constituting infringement." *Essex Music, supra,* 743 F. Supp. at 244.

*Bus. Trends Analysts v. Fredonia Grp.*, 650 F. Supp. 1452, 1454 (S.D.N.Y. 1987), held the plaintiff could not show irreparable harm "on grounds of delay" above" where six months passed between discovering the basis for a preliminary injunction and moving for relief.

*M.V. Music, supra*, summarized the common-sense rule as follows:

> When determining whether a moving party faces irreparable harm without a preliminary injunction, district courts "should generally consider [any] delay" on the movant's part in seeking injunctive relief. . . . Such delays undermine the theory justifying preliminary injunctions, namely "that there is an urgent need for speedy action to protect the plaintiff's rights." . . . In the context of trademark and copyright infringement cases, courts may overlook delay in seeking preliminary injunctive relief if the dilatory moving party "offer[s] any persuasive justification for its delays, 'such as ignorance regarding defendant's alleged infringement, good faith attempts to investigate that infringement, and diligent pursuant of settlement negotiations'."

653 F. Supp.3d at 39 (citations omitted).

Plaintiff gives no justification for its 5-month delay, and unquestionably knew of the alleged infringement in October, 2023.

Moreover, Plaintiff did not delay filing this action or moving for a preliminary injunction because of any on-going, diligent settlement discussions. To the contrary, Mary Free Bed responded to Plaintiff's November 14, 2023 cease-and-desist letter

on November 30, 2023, asking Plaintiff to discuss with Mary Free Bed Plaintiff's allegations of infringement.  (Exhibit 3).  On January 23, 2024, Mary Free Bed's counsel renewed his request for Plaintiff  "to identify the documents at issue" so "we can find out if there is in fact a violation SmithGroup's copyright and, if so, put a stop to it," and told Plaintiff that because "Mary Free Bed does not know what documents are the subject of an infringement claim, it cannot determine whether they are in fact being used."  (Exhibit 4).

Plaintiff failed to respond to Mary Free Bed's January 23, 2024 letter, instead remaining silent and non-communicative until commencing this action on March 11, 2024.  Plaintiff did not delay seeking preliminary injunctive relief due to any on-going, diligent settlement discussions because Plaintiff refused to engage in any such discussions.

### d.    Plaintiff's claim that irreparable injury should be presumed is based on outdated law.

In addition to Plaintiff's inexplicable delay vitiating any presumption of irreparable injury, with respect to the "rebuttable presumption of irreparable harm in copyright-infringement cases," the Sixth Circuit noted in *Enchant, supra* that "[w]hen this circuit court recognized the presumption, we relied on Ninth Circuit

19

case law,"[1] but that "the Ninth Circuit has since done away with the presumption, finding it inconsistent with modern Supreme Court case law regarding injunctions." *Enchant* 958 F.3d at 540, n.3.  The Sixth Circuit observed that "[o]ther circuits and leading treatises agree," and "[s]o . . . the rebuttable presumption appears to be on its last legs," although *Enchant* did not "decide whether the presumption should remain the law of our circuit." *Id.*

Plaintiff's reliance on that rebuttable presumption is no longer tenable given the Supreme Court has undermined legal authority upon which the presumption was based.

Plaintiff's failure to make a "clear showing" of immediate irreparable injury by itself requires that the preliminary injunction be denied.

### 3. Plaintiff cannot establish that the balance of harm weighs in its favor.

Against Plaintiff's speculative assertion that it fears incurring some kind of "reputational injury" absent a preliminary injunction enjoining the use of Pure Architects' designs, the Court must balance the injury that would be caused by the potential delayed construction of the Mary Free Bed pediatric hospital wing.

The Michigan Department of Health and Human Services ("MDHHS") granted Mary Free Bed's Certificate of Need Application No. 23-0233, finding that

---

[1] *Forry, Inc. v. Neundorfer, Inc.*, 837 F.2d 259, 267 (6th Cir. 1988) (citing *Apple Computer, Inc. v. Formula Int'l, Inc*, 725 F.2d 521, 525-26 (9th Cir. 2011)).

it satisfied M.C.L. 333.22225(i) ("the proposed project will meet an unmet need in the area proposed to be served") and 333.22225(2)(a) (the expansion project "is the most efficient and effective method of meeting that unmet need").  (Exhibit 5).  That "unmet need" is the need for a pediatric rehabilitation facility to serve children and their families in Western Michigan.

Although Defendants have not infringed Plaintiff's architectural designs, the preliminary injunctive relief Plaintiff seeks risks delaying finalizing the design and construction of the pediatric hospital and fulfilling the need in the community for that facility.  Such injury to the public far outweighs Plaintiff's speculative fear that it might lose potential clients, which as set forth *supra*, is contrary to the undisputed fact that no potential clients of SmithGroup have approached Pure Architects to design pediatric rehabilitation hospital facilities.

### 4. Plaintiff cannot establish that a preliminary injunction is in the public interest.

For the same reasons in Section II(B)(3), the public interest is in having the pediatric rehabilitation hospital designed, built and running to satisfy the demonstrated need for the facility.  Delay occasioned by Plaintiff's request for a preliminary injunction is contrary that the public interest.

### III.    CONCLUSION

For all the foregoing reasons, Plaintiff's Motion for Preliminary Injunction should be denied.

Respectfully submitted,

By:    /s/  *K. Scott Hamilton*
K. Scott Hamilton
John G. Cameron, Jr.
Christopher A. Cornwall
Attorneys for Defendants
500 Woodward Avenue, Ste. 4000
Detroit, MI  48226
(313) 223-3500
khamilton@dickinsonwright.com
jcameron@dickinsonwright.com
ccornwall@dickinsonwright.com

Dated:  April 29, 2024

### CERTIFICATE OF COMPLIANCE

Pursuant to W.D. Mich. L.R. 7.2(b)(ii), based on the word processing software used to create this document, Microsoft Word 2016, the number of words, excluding the case caption, cover sheet, table of contents, table of authorities, signature blocks and exhibits, is 4,663 within the word limit of L.R. 7.2(b)(i).

By:    /s/  *K. Scott Hamilton*
K. Scott Hamilton

Dated:  April 29, 2024

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 29, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record.

*/s/ K. Scott Hamilton*
K. Scott Hamilton (P44095)
Dickinson Wright PLLC
500 Woodward Ave., Ste. 4000
Detroit, MI 48226-3425
313-223-3500
KHamilton@dickinsonwright.com
