UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SMITHGROUP, INC.,

    Plaintiff,

v.

PURE ARCHITECTURE AND
DEVELOPMENT, PLLC d/b/a Pure
Architects, and MARY FREE BED
REHABILITATION HOSPITAL, INC.,

    Defendants.

_____/

CASE No. 1:24-cv-249

HON. ROBERT J. JONKER

## OPINION AND ORDER

### INTRODUCTION

The matter before the Court in this copyright action is Plaintiff's motion for Preliminary Injunction (ECF No. 9) and Defendants' Motion to Dismiss or Compel Arbitration (ECF No. 12). Both motions have been fully briefed. For the reasons set out below, the Court grants the defense motion to the extent it seeks to compel arbitration and stays this case. The preliminary injunction motion is dismissed as moot, without prejudice to consideration in arbitration.

### BACKGROUND

According to SmithGroup's Complaint, in December 2022 Defendant Mary Free Bed selected SmithGroup to provide architectural and engineering services for the hospital's planned expansion of its pediatric rehabilitation hospital. (Compl. ¶ 7, ECF No. 1, PageID.3). On June 5, 2023, SmithGroup and Mary Free Bed entered into a standard American Institute of Architects (AIA) Agreement ("Agreement") that set out the terms and conditions of the services SmithGroup

would provide towards the pediatric hospital.  (*Id.* at ¶ 8).  The defense has attached a copy of the Agreement to its motion.

As described in the Complaint, the Agreement contained a timeline of "milestone" dates, including a design kickoff of January 2023 and a Schematic Design Deliverable date of September 2023.  (*Id.* at ¶ 8; Agreement § 1.1.4, ECF No. 12-1, PageID.211).  All this was in advance of a contemplated April 2024 construction commencement date (§ 1.1.4.2) and a completion date of March 2026 (§ 1.1.4.3).  The Agreement further contained provisions regarding copyrights and licenses (§ 7); claims and disputes (including arbitration) (§ 8); and for termination or suspension of the Agreement (§ 9).  In particular, the arbitration provision states:

> The Owner and Architect shall commence all claims and causes of action against the other and arising out of or related to this Agreement, whether in contract, tort, or otherwise, in accordance with the requirements of the binding dispute resolution method selected in this Agreement and within the period specified by applicable law, but in any case no more than 10 years after the date of Substantial Completion of the Work. The Owner and Architect waive all claims and causes of action not commenced in accordance with this Section 8.1.1.

(§ 8.1.1.) The parties further agreed that if they were unable to resolve disputes in mediation (under the agreed to format), then the method of binding dispute resolution would be arbitration.  (§8.2.4). The Agreement specified that "any claim, dispute, or other matter in question arising out of or related to this Agreement subject to, but not resolved by, mediation shall be subject to arbitration, which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of this Agreement.  A demand for arbitration shall be made in writing, delivered to the other party to this Agreement, and filed with the person or entity administering the arbitration." (§ 8.3.1).

2

After executing the Agreement, SmithGroup provided architectural services to Mary Free Bed as the parties had agreed. (Compl. ¶ 15). As part of this work, SmithGroup says it gave Mary Free Bed access to "dozens of architectural renderings, sketches, site planning and other materials" for the pediatric hospital. (*Id.* at ¶ 17). Then, on September 8, 2023, Mary Free Bed terminated the Agreement. (*Id.* at ¶ 20). The following month, Mary Free Bed announced that it had retained Defendant Pure Architecture to design the planned expansion. (*Id.* at ¶ 24).

On March 11, 2024, SmithGroup filed the instant copyright lawsuit against Mary Free Bed and Pure Architecture. (ECF No. 1). SmithGroup claims the Defendants used its protected works to create and publish unauthorized derivative works. (Compl. ¶ 25). Pure Architecture's designs, it says, contain design elements that are substantially similar to SmithGroup's renderings, sketches, and site planning. Moreover, given the short period of time that elapsed between the termination of the Agreement and the publication of Pure Architecture's designs, SmithGroup contends it is unlikely that Pure Architecture could have created its designs without relying on the material SmithGroup produced for Mary Free Bed. It seeks a preliminary injunction directing Defendants to cease any and all infringement of its protected works, including the construction of any structures based on SmithGroup's copyrighted material. (ECF Nos. 9 and 11). The defense moves to dismiss or, alternatively, to compel arbitration. (ECF Nos. 12). The Court need not decide any merits-based arguments, including waiver. The Court determines this matter must be arbitrated.

## LEGAL STANDARDS

A motion to compel arbitration is treated as a motion to dismiss for failure to state a claim under FED. R. CIV. P. 12(b)(6). *See, e.g.*, *Barnabo v. Edward D. Jones & Co., LP*, No. 2:23-cv-09, 2023 WL 2730218, at *1 (W.D. Mich. Feb. 28, 2023) (collecting cases). Accordingly, for

3

purposes of deciding the defense motion, the Court accepts all well-pleaded factual allegations in SmithGroup's Complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

## DISCUSSION

"Before compelling an unwilling party to arbitrate, the Court must engage in a limited review to determine whether the dispute is arbitrable, meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003).[1]  The parties have framed several issues for decision based on the two-step framework in *Javitch*. At the first step, the parties dispute whether Pure Architecture, as a non-signatory to the Agreement, may benefit from the arbitration agreement against SmithGroup, which is a signatory to the Agreement. And even if the matter must be arbitrated, at the second step SmithGroup contends this Court may nevertheless enter the equitable relief it requests.

### 1. A Valid Agreement to Arbitrate Exists

The first issue is whether the arbitration agreement is valid. *Javitch*, 315 F.3d at 624; *see also Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (stating that to compel arbitration "a federal court must [first[ determine whether the parties have agreed to arbitrate the

---

[1] The language of the Federal Arbitration Act ("FAA") permits parties to arbitrate both the merits of a dispute and "'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (quotation omitted). Accordingly, the Supreme Court has held that parties can agree to arbitrate "gateway" questions of arbitrability. *See Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63, 68-69, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010); *Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021). "[I]f a valid [arbitration] agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019). As detailed below, the Agreement certainly covers "all" claims, including requests for injunctive relief. Both sides do ask the Court to determine whether Pure Architecture may compel arbitration even though it did not sign the Agreement.

4

dispute at issue."). "Because arbitration agreements are fundamentally contracts" courts "review the enforceability of an arbitration agreement according to the applicable state law of contract formation. *Tillman v. Macy's, Inc.*, 735 F.3d 453, 456 (6th Cir. 2013). Here, the parties agree that Michigan law applies. Under Michigan law, "[a] valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Bank of Am., NA v. First Am. Title Ins. Co.*, 499 Mich. 74, 101 (2016) (internal quotation marks and citation omitted).

There is no dispute here that there was a valid agreement to arbitrate between SmithGroup and Mary Free Bed. But as SmithGroup points out, Pure Architecture is not a party to that agreement. Thus, it maintains, the Court should deny the motion to dismiss because the FAA "does not require parties to arbitrate when they have not agreed to." (*See* Pl.'s Br. at 3, ECF No. 15, PageID.424 (quoting *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002)). To SmithGroup, the fact that Pure Architecture is not a party to that agreement means that SmithGroup did not "agree[] to" arbitration with Pure Architecture, so it should be permitted to proceed with this litigation, at least against Pure Architecture. The Court does not read things as narrowly as SmithGroup does. Rather, the relevant question appears to be whether Michigan law, when fairly read, permits Pure Architecture to enforce the arbitration clause even though it did not sign the contract. *AtriCure, Inc. v. Meng*, 12 F.4th 516, 520 (6th Cir. 2021); *see also Kloosterman v. Metropolitan Hospital*, No. 1:22-cv-944 (W.D. Mich. Apr. 5, 2024) (Beckering, J.) (determining that individual defendants could enforce arbitration provision they were not a party to under Michigan law of agency). Because the Court concludes that Michigan equitable estoppel law does permit Pure Architecture to do so, SmithGroup's argument lacks merit.

5

The Sixth Circuit's decision in *AtriCure* details the history of nonparty enforcement of arbitration agreements in federal courts.  To begin, Section 2 of the FAA provides that a contractual agreement "to settle by arbitration a controversy thereby arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4."  9 U.S.C. § 2.  The FAA reflects a "liberal federal policy favoring arbitration agreements" and creates a presumption of arbitrability. *Moses H. Cone Mem'l Hosp. v. Mercury Cosntr. Corp.*, 460 U.S. 1, 24-25 (1983).  So, as for nonparties to arbitration agreements, courts historically used this strong federal policy to influence the question of whether nonparties were covered by an agreement to arbitrate.  The analysis became "divorced" from a state's contract law.  *AltriCure*, 12 F.4th at 523-24.

Things changed following the Supreme Court's decision in *Arthur Andersen LLP v. Carlisle*, 556 U.S. 524 (2009).  As the court in *AltriCure* put it, the Supreme Court "jettisoned" the federal-common law approach; courts "now must look to the relevant state's common law to decide when nonparties may enforce (or be bound by) an arbitration agreement."  *AltriCure*, 12 F.4th at 524.  Moreover, "[t]his *state-law* focus also leaves no room for the *federal* presumption favoring arbitration[.]"  *Id.* (emphasis in original); *see also Cole v. Mariner Finance, LLC*, No. 3:22-cv-440, 2022 WL 17069146, at *2 (W.D. Ky. Nov. 17, 2022) (noting the presumption in favor of arbitrability "only applies to signatories to a contract.").  As to non-signatories, courts "must following neutral state-law rules when deciding whether nonparties may enforce or be bound by an arbitration contract—without suggesting that the outcome should be influenced by any federal policy-laden 'thumb on the scale' favoring or disfavoring arbitration."  *AltriCure.* 12 F.4th at 522.

As a threshold matter, the Court observes this is not a case where a party is using an arbitration agreement as a sword against a non-signatory because SmithGroup is a party to the arbitration agreement. There is no dispute then, that SmithGroup consented to arbitration. Even though SmithGroup says it did not agree to arbitration with *this* defendant, the undisputed fact that SmithGroup signed the Agreement effectively eliminates any consent or due process concerns regarding Pure Architecture's use of the Agreement as a shield against litigation. *See Firexo, Inc. v. Firexo Grp. Ltd.*, No. 23-3085, 2024 WL 1597520, at *11 (6th Cir. Apr. 12, 2024) (noting as such in a situation where "the signatory has expressly consented to the selected forum and '[t]he non-signatory [i]s seeking to take advantage of the clause to further its own interest in litigation.'" (quoting John F. Coyle & Robin J. Effron, *Forum Selection Clauses, Non-Signatories, and Personal Jurisdiction*, 97 Notre Dame L. Rev. 187, 209 (2021)).

Accordingly, the Court turns to how *AltriCure* applies here under the laws of Michigan. The gist of Pure Architecture's argument is that equitable estoppel permits it to compel SmithGroup to arbitrate. (Defs.' Reply Br. 6-12, ECF No. 17, PageID.450-457). In *Javitch*, the Sixth Circuit Court of Appeals determined there were five theories, including equitable estoppel, that could conceivably bind non-signatories to arbitration agreements. *Javitch*, 315 F.3d at 629 (incorporation by reference, assumption, agency, and veil-piercing/alter ego being the other four theories). "Generally, in the arbitration context, equitable estoppel allows a nonsignatory to a written agreement containing an arbitration clause to compel arbitration where a signatory to the written agreement must rely on the terms of that agreement in asserting its claims against the nonsignatory." *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 438 (2020) (internal quotation marks and citation omitted). That appears to be the case here, because the intellectual property rights that SmithGroup seeks to enforce are

directly addressed by several portions of the Agreement, including particularly Article 7 on Copyrights and Licenses.

But after *AltriCure* and *Arthur Andersen*, the Court must also look to Michigan's equitable estoppel doctrines to determine whether Pure Architecture may enforce the arbitration agreement. Michigan law recognizes that a nonparty to a contract "can still be bound by an agreement pursuant to ordinary contract-related legal principles, including . . . estoppel." *AFSCME Council 25 v. Wayne County*, 292 Mich. App. 68, 81 (2011). And in two decisions, the Michigan Court of Appeals have considered circumstances similar to the instant case and determined that equitable estoppel prevented a plaintiff from avoiding arbitrating its claims against a defendant who was not a party to the arbitration agreement.

In *City of Detroit Police & Fire Ret. Sys. v. GSC CDO Fund Ltd.*, No. 289185, 2010 WL 1875758, at *7 (Mich. Ct. App. May 11, 2010), the plaintiff entered into a consulting agreement containing an arbitration provision with the investment advisor Smith Barney Shearson. When the relationship soured, the plaintiff brought suit sounding in fraud and breach of contract against Smith Barney, two of its employees, the employee's subsequent employer (Morgan Stanley), and certain private equity investment parties. The nonparties sought to compel arbitration under the plaintiff's agreement with Smith Barney. The Michigan Court of Appeals concluded that the nonparties could enforce the arbitration agreement against the plaintiff under principles of equitable estoppel "where the claims are based on "substantially interdependent and concerted misconduct" by all defendants. *Id.* at *7. Such a situation was present in that case, the court held, because the allegations based on faulty investment advice and the failure to disclose certain business relationships and thus all ultimately stemmed from the plaintiff's relationship with Smith Barney. *Id.*

8

Later, in *Vascular Mgmt. Servs. of Novi, LLC v. EMG Partners, LLC*, No. 360368, 2023 WL 2436801, at *1 (Mich. Ct. App. Mar. 9, 2023), the Michigan Court of Appeals again held that nonparties to an agreement could compel the plaintiff (who was a signatory to the arbitration agreement) to arbitrate a dispute.  The court of appeals concluded the nonparties' equitable estoppel argument had merit: "Because of plaintiffs' reliance (at least in part) on the operating agreement [with the arbitration provision] in pursuing these counts against these two nonsignatories, they are estopped from avoiding the arbitration provision within that same agreement." *Id.*

Consistent with the above, Pure Architecture may compel SmithGroup to arbitrate its claims against both Mary Free Bed and Pure Architecture.  The Agreement is the root of intellectual property rights at issue here.  Both sides will necessarily rely on provisions in the Agreement to advance their positions on the merits.  Moreover, like in *GSC CDO Fund,* SmithGroup's claims against Pure Architecture are inextricably intertwined with those against Mary Free Bed because the nub of SmithGroup's allegations is that the two defendants worked together on the alleged infringement when Mary Free Bed provided the drawings to Pure Architecture to produce the purportedly derivative infringing works.   On this record, the Court concludes that Pure Architecture can compel SmithGroup to arbitrate.

### 2. Scope of Agreement to Arbitrate

The remaining inquiry is whether the parties' dispute falls within the substantive scope of the arbitration agreement.  *Javitech*, 315 F.3d at 624.  The dispute here is whether this Court retains jurisdiction over SmithGroup's motion for a preliminary injunction despite the arbitration agreement.  SmithGroup asserts this Court does under the Sixth Circuit Court of Appeals' decision in *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1380 (6th Cir. 1995).

9

The defense argues that the question of whether a preliminary injunction is for arbitration or for the Court is itself a gateway question delegated to the arbitrator. The defense argues the entire dispute, including SmithGroup's preliminary injunction request, belongs in arbitration and not in this Court.

Generally, for questions of arbitrability such as this one, there must be clear and unmistakable evidence in the Agreement that SmithGroup and Defendants agreed to have an arbitrator resolve this issue, otherwise the Court must decide it. *Blanton v. Domino's Pizza Franchising, LLC*, 962 F.3d 842, 844 (6th Cir. 2020). Whether clear and unmistakable evidence exists is a question of federal law. *Id.* at 846-47.

The defense argues that § 8 of the Agreement clearly and unmistakably delegates all threshold questions of arbitrability to the arbitrator because it requires that "*any* claim, dispute or other matter in question arising out of or related to this Agreement . . . *shall* be subject to arbitration, which . . . *shall* be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules[.]"   (Agreement § 8.3.1, ECF No. 12-1, PageID.228). The Court agrees. The langauge "any" and "shall" is unqualified, mandatory, and all-encompassing. Moreover, the parties' incorporation of the American Arbitration Association's ("AAA") Construction Industry Arbitration Rules into their Agreement corroborates the scope of their chosen language in § 8.3.1. *See Blanton*, 962 F.3d at 845-46, and cases cited. AAA Construction Industry Arbitration Rule R-9(a) permits an arbitrator "to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." (eff. July 1, 2015), *available at* ECF No. 17-3, PageID.673. In addition, AAA Construction Industry Arbitration Rule R-38(a) empowers the arbitrator to "take whatever interim measures he or she deems necessary, including injunctive relief and measures for the

10

protection or conservation of property and disposition of perishable goods." *Id.* Thus, this is *not* a situation in which a party must resort to the courts to freeze the status quo during arbitration— the arbitrator here has the power to do that himself or herself. *See Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1386 (6th Cir. 1995).

Nevertheless, SmithGroup argues that *Performance Unlimited* means it can seek injunctive relief here. In *Performance Unlimited*, the Sixth Circuit Court of Appeals determined that:

> [I]n a dispute subject to mandatory arbitration under the Federal Arbitration Act, a district court has subject matter jurisdiction under § 3 of the Act to grant preliminary injunctive relief provided that the party seeking the relief satisfies the four criteria which are prerequisites to the grant of such relief. We further conclude that a grant of preliminary injunctive relief pending arbitration is particularly appropriate and furthers the Congressional purpose behind the Federal Arbitration Act, where the withholding of injunctive relief would render the process of arbitration meaningless or a hollow formality because an arbitral award, at the time it was rendered, "could not return the parties substantially to the status quo ante."

*Id.* at 1381 (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1053 (4th Cir. 1985)).

Shorn from the context of the *Performance Unlimited* facts, this language plausibly supports an argument that the Court generally retains jurisdiction to provide emergent relief in any case that satisfies the normal four factor test for preliminary injunctions. But this Court, like other courts to consider the issue, believes that the actual holding of the case is more narrowly limited to situations where relief to preserve the status quo is essential to ensure that the arbitration is a meaningful, rather than hollow, proceeding. *See, e.g.*, *Nationwide Mut. Ins. Co. v. Universal Fid. Corp.*, No. C2-01-1271, 2002 WL 31409850, at *4 (S.D. Ohio July 15, 2002). In *Performance Unlimited*, the Court found jurisdiction for emergent relief because the absence of that relief threatened imminent financial devastation that would sink the plaintiff before arbitration could

11

occur. *SmithGroup* makes no such claim here. A meaningful arbitration can occur even without emergent relief from this Court. This is especially true where, as here, the arbitrator is empowered to award injunctive relief under the Rules the parties expressly adopted in their Agreement.

In addition, neither § 8.3.1 nor any other provision of the Agreement excludes arbitrability disputes such as this one from arbitration under the AAA Construction Industry Arbitration Rules. *Cf. United States v. Miraca Life Scis., Inc.*, No. 3:13-cv-1025, 2021 WL 679275, at *4 (M.D. Tenn. Feb. 22, 2021) (reaching arbitrability question whether parties could pursue interim equitable relief in the courts because the parties' agreement expressly exempted interim equitable relief from arbitration in accordance with the AAA Rules). As noted above, Section 8 does not carve out any claims from arbitration. The Court therefore concludes that the Agreement's incorporation of the AAA Construction Industry Arbitration Rules without a carveout provision allowing SmithGroup to seek preliminary injunctive relief in the courts clearly and unmistakably shows that the parties' dispute is a question reserved for the arbitrator. *See Blanton*, 962 F.3d at 852.

Even if there was not clear and unmistakable evidence that the parties intended to delegate this arbitrability issue to the arbitrator, the Court would conclude that the Agreement bars SmithGroup from seeking judicially-imposed injunctive relief in aid of arbitration. To decide this contract interpretation question, the Court "starts with a presumption that an arbitration agreement is governed by the contract law of the state whose laws otherwise apply to it." *AtriCure, Inc.*, 12 F.4th at 522. Because § 10.1 of the Agreement states that it "shall be governed by the law of the place where the Project is located" (ECF No. 12-1, PageID.229), the Court begins its analysis with Michigan contract law. In Michigan, a contract provision is unambiguous if—after considering the contract as a whole—it is subject to only one reasonable interpretation. *See Klapp v United Ins Group Agency, Inc*, 468 Mich. 459, 467 (2003).

The language of the Agreement meets this standard.  Section 8.3.1 is a broad and unqualified agreement that "any claim, dispute or other matter in question . . . shall be subject to arbitration[.]"  No other provision in the Agreement is arguably at odds with this plain and unqualified language. To the contrary, the provision adopting the Construction Industry Rules of AAA, which permit an arbitrator to grant interim relief, reinforces the point.  Thus, the Agreement as a whole is amenable to only one reasonable interpretation: all disputes, including whether SmithGroup is entitled to emergent injunctive relief, are reserved for the arbitrator, not the courts.

### 3. *Dismissal or Stay of SmithGroup's Action*

The final question for the Court is whether to dismiss the action or enter a stay pending arbitration.  Under § 3 of the FAA, when a district court is "satisfied that the issues involved in such suit or proceeding is referable to arbitration . . . [i]t shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  The Sixth Circuit has interpreted this language as mandating a stay when a party requests one.  *Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 19 F.4th 938, 941 (6th Cir. 2021).  The defense seeks a stay here.   Accordingly, the present matter must be stayed to permit the parties to participate in arbitration.  *See* 9 U.S.C. § 3.

## CONCLUSION

**ACCORDINGLY, IT IS ORDERED** that Defendants' Motion to Dismiss or, Alternatively, to Compel Arbitration (ECF No. 12) is **GRANTED** to the extent that this matter must be arbitrated.

**IT IS FURTHER ORDERED** that SmithGroup's Motion for Preliminary Injunction (ECF No. 9) is **DISMISSED AS MOOT** and without prejudice to whatever injunctive relief it might seek in arbitration.

**IT IS FURTHERED ORDERED** that further proceedings in this federal action are **STAYED** under Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, pending resolution of arbitration.

**IT IS FURTHER ORDERED** that the parties shall provide the Court with a short, written status report of the arbitration proceedings every 90 days, and upon completion of the arbitration process. Failure to keep the Court apprised of the status of the case on this schedule may lead to dismissal of this action for lack of progress.

**IT IS FURTHER ORDERED** that the Clerk's Office shall administratively close this case subject to the participation of the parties in arbitration. Upon conclusion of arbitration, either party may move to reopen this case, if necessary, by filing a motion referring to this Order.

Dated:      May 8, 2024                    /s/ Robert J. Jonker
                                           ROBERT J. JONKER
                                           UNITED STATES DISTRICT JUDGE